IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY LOPEZ, as guardian, next friend and parent of Gilberto Lopez, a minor | )<br>)<br>) |
| | ) No. 3-07-0799 |
| v. | )<br>) |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY; and GENESIS LEARNING CENTERS | )<br>)<br>)<br>)<br>) |
| UNITED STATES OF AMERICA, | )<br>) |
| Movant for Intervention | ) |

O R D E R

As provided herein, the motion to intervene filed by the United States (Docket Entry No. 109) is GRANTED.

The United States seeks to intervene, pursuant to Rule 24(a) and (b) of the Federal Rules of Civil Procedure, to "redress violations of Title IX of the Education Amendments of 1972 ("Title IX")," 20 U.S.C. §§ 1681 et seq. Docket Entry No. 109, at 1. Neither the plaintiff nor defendant Genesis Learning Centers filed a response to the motion to intervene, indicating that they have no opposition to the motion. See Local Rule 7.01(b). However, defendant Metropolitan Government of Nashville and Davidson County ("Metro") filed a response in opposition (Docket Entry No. 115), to which the United States filed a reply (Docket Entry No. 130).

I. PROCEDURAL BACKGROUND

The plaintiff initially filed this action on July 30, 2007, in the Davidson County, Tennessee Circuit Court, naming as the defendant the Board of Education for the Metropolitan Nashville Public Schools, and asserting claims for damages under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 et seq., and 42 U.S.C. § 1983, as a result of an alleged sexual assault on Gilberto Lopez by another student on a Metro special education school bus. The plaintiff also asserted claims for injunctive relief and sought to certify the case as a class action.

Defendant Metro removed the case to this Court on August 2, 2007. The defendant's motion to correct misjoinder (Docket Entry No. 8) and the plaintiff's motion to amend the complaint (Docket Entry No. 12) were granted by order entered September 10, 2007 (Docket Entry No. 14), and the plaintiff filed her first amended complaint on September 14, 2007 (Docket Entry No. 15), naming the Metropolitan Government of Nashville and Davidson County as the sole defendant.

On November 13, 2007, the plaintiff filed a motion for class determination (Docket Entry No. 24), which the plaintiff agreed to withdraw, without prejudice on November 28, 2007. By order entered December 3, 2007 (Docket Entry No. 29), the plaintiff was given until December 7, 2007, to file a renewed motion for class certification with an accompanying memorandum. The plaintiff filed a renewed motion for class determination on December 7, 2008 (Docket Entry No. 31), to which the defendant responded (Docket Entry No. 34).

The plaintiff's motions to amend the complaint (Docket Entry No. 38 and 61) were granted by order entered March 7, 2008 (Docket Entry No. 70), and the plaintiff filed a third amended complaint on March 7, 2008 (Docket Entry No. 71), naming Genesis Learning Centers, a private school that contracted with Metro and that Gilberto attended, as an additional defendant.[1]

By order entered April 1, 2008 (Docket Entry No. 87), the plaintiff's motion for class determination was denied to allow Genesis an opportunity to address the plaintiff's motion. At the

---

[1] The second amended complaint was never officially filed since the Court granted the plaintiff's leave to file the second and third amended complaints at the same time.

case management conference held on April 4, 2008, the plaintiff was given until June 16, 2008, to file a renewed motion for class certification. See order entered June 27, 2008 (Docket Entry No. 96). The plaintiff did not file a renewed motion for class certification, and, at the case management conference held on June 30, 2008, plaintiff's counsel confirmed that the plaintiff would not seek class certification in this case. See order entered July 2, 2008 (Docket Entry No. 99).

The plaintiff's motion to file a fourth amended complaint (Docket Entry No. 93) was granted by order entered June 30, 2008 (Docket Entry No. 97), and the fourth amended complaint was filed on June 30, 2008, adding claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, § 504 of the Rehabilitation Act, 29 U.S.C. § 794, and 20 U.S.C. §§ 1681 et seq. ("Title IX"). That amended complaint is now the operative complaint in this case.

## II. RULE 24(a)

The United States seeks to intervene as of right under Rule 24(a)(2) of the Federal Rules of Civil Procedure, which provides as follows:

> On timely motion, the court must permit anyone to intervene who:
>
> ***
>
> claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.[2]

A movant seeking to intervene as of right pursuant to Rule 24(a)(2) must show the following: (1) that the motion to intervene was timely; (2) that the movant has a substantial interest in the subject matter of the case; (3) that the movant's ability to protect that substantial legal interest may be impaired in the absence of intervention; and (4) that the parties already before the Court may not adequately represent the proposed intervenor's interest. Coalition to Defend Affirmative Action v.

---

[2] Rule 24(a)(1) provides that, upon timely motion, a court must permit anyone to intervene who is given an unconditional right to intervene by a federal statute. The movant does not suggest that intervention is appropriate under section (a)(1).

3

Granholm, 501 F.3d 775, 779 (6th Cir. 2007), petition for cert. denied, 2008 WL 728200 (Oct. 6, 2008); Northeast Ohio Coalition for the Homeless and Serv. Employees Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1007 (6th Cir. 2006); Providence Baptist Church v. Hillandale Comm., Ltd., 425 F.3d 309, 315 (6th Cir. 2005); United States v. Michigan, 424 F.3d 438, 443 (6th Cir. 2005); United States v. Tennessee, 260 F.3d 587, 591-92 (6th Cir. 2001); Stupak-Thrall v. Glickman, 226 F.3d 467, 471 (6th Cir. 2000); Grutter v. Bollinger, 188 F.3d 394, 397-98 (6th Cir. 1999); Michigan State AFL-CIO v. Miller, 103 F.3d 1240, 1245 (6th Cir. 1997); United States v. Detroit Internat'l Bridge Co., 7 F.3d 497, 499 (6th Cir. 1993); Cuyahoga Valley Ry. Co. v. Tracy, 6 F.3d 389, 395 (6th Cir. 1993); Jansen v. City of Cincinnati, 904 F.2d 336, 340 (6th Cir. 1990); Grubbs v. Norris, 970 F.2d 343, 345 (6th Cir. 1989); Bradley v. Milliken, 828 F.2d 1186, 1191 (6th Cir. 1987). A movant for intervention must satisfy all four prongs and failure to satisfy one of the prongs will result in denial of the motion. United States v. Michigan, supra; Grubbs, supra.

Although most frequently addressed in the context of determination of whether a putative intervenor has a substantial interest in the litigation, the Court of Appeals for the Sixth Circuit has also held that, in general, requests for intervention should be construed liberally in favor of granting intervention. See Midwest Realty Mgmt. Co. v. City of Beavercreek, 93 Fed.Appx. 782, 784 (6th Cir. 2004); Stupak-Thrall, 226 F.3d at 472; Purnell, 925 F.2d at 950.

### A. Timeliness

An evaluation of the timeliness of a motion to intervene should be made in the context of the relevant circumstances. Jansen, supra; Bradley v. Milliken, supra. Factors to be considered are (1) the point to which the lawsuit has progressed; (2) the purpose for which the intervention is sought; (3) the length of time that the movant knew or should have known of its interest in the case before it actually sought to intervene; (4) the prejudice to the original parties due to the movant's failure to promptly intervene after it knew or should have known of its interest in the case; and (5) the existence of unusual circumstances militating against or in favor or intervention. Tennessee,

4

260 F.3d at 592; Stupak-Thrall, 226 F.3d at 473; Cuyahoga Valley, 6 F.3d at 395-96; Jansen, supra; Grubbs, supra.

Defendant Metro argues that, because of the current procedural posture of the case, the movant should not be allowed to intervene. Specifically, defendant Metro suggests that the movant raises "the possibility of re-visiting discovery that is already complete and interfering with the current discovery schedule set by the existing parties." Docket Entry No. 115, at 3. However, the movant has represented that it "does not intend to ask the Court to deviate from the deadlines set forth in the current scheduling orders," Docket Entry No. 110, at 7, and does not seek to add parties or claims to this case. The movant did not, however, unequivocally represent that it would not conduct any additional discovery, but instead maintained that it does not "intend to issue substantial discovery requests in light of the comprehensive factual record already developed in this case." Docket Entry No. 130, at 4. It would have been helpful to the Court to know what additional discovery, if any, the movant would seek. However, without that information, it appears that whatever additional discovery would be minimal particularly in light of the December 5, 2008, deadline for completion of fact discovery as established in the order entered October 10, 2008 (Docket Entry No. 126).

(1)     Point to Which Lawsuit Has Progressed

This case was filed over a year ago, discovery is almost complete, and the trial is scheduled on May 26, 2009. Although the movant is seeking to intervene at the later stage of this litigation, almost seven (7) months remain before the trial date.

(2)     Purpose for Intervention

The movant contends that it has a strong interest in ensuring that recipients of federal funds, such as defendant Metro, do not discriminate on the basis of sex in violation of Title IX, and an interest in ensuring that federal funds are not disbursed to entities that do not comply with the

federal law. Docket Entry No. 110, at 4; Docket Entry No. 130, at 2. The movant also argues that it has a "powerful interest" in pursuing "the most expeditious and efficient means available" to eliminate allegedly discriminatory conditions. Docket Entry No. 130, at 3. In other words, although the movant can institute an investigation on its own, it is more efficient to seek relief in the context of this lawsuit in which discovery has already been conducted, rather than addressing the same issues in another, duplicative administrative proceeding.

Defendant Metro has not disputed that the movant has a substantial interest in the subject matter of this litigation.

(3)     Length of Time Movant Knew or Should Have Known of Its Interest

At the initial case management conference on November 28, 2007, plaintiff's counsel represented that the United States was aware of the lawsuit at that time.[3] According to the movant, it was the plaintiff's decision in June of 2008, not to seek class certification that was the pivotal event in its decision to seek intervention in this case. It is not entirely clear why the movant's decision was contingent upon the plaintiff's determination not to seek class certification, and is not clear whether the movant believes that, by no longer seeking class certification, the plaintiff has also abandoned her request for injunctive relief or whether the plaintiff simply will be less motivated to seek injunctive relief.

Although the movant was clearly aware of the pendency of this case and its own interest well before June of 2008, the movant's level of concern for the potential impairment of its interest and the potential that the plaintiff might not adequately represent the movant's interest was clearly elevated once the plaintiff decided not to seek class certification.

---

[3] Interestingly, although the plaintiff had asserted a Title IX claim in the companion case of Staehling v. Metro, 3-07-0797, in the initial complaint filed in state court on July 16, 2007, it was not until April 30, 2008, that the plaintiff sought to add a Title IX claim in this case by a fourth amended complaint. See Docket Entry No. 93. Just as interesting, the movant did not seek to intervene in the Staehling case even though a Title IX claim had been asserted throughout that litigation. The movant did, however, seek to file and was granted leave to file an amicus brief in the Staehling case.

6

(4)     Prejudice to Other Parties

The only party that has asserted potential prejudice is defendant Metro, which raises the specter of the movant's revisiting the extensive discovery already taken in this case. However, the movant represents that its intervention will not cause any modification of scheduling deadlines and that it will not engage in "substantial" additional discovery. Without more information from the movant about what discovery it might seek, it is difficult to determine if the concerns of defendant Metro have any validity. However, the Court will take the movant at its word and assume that discovery, if any, it may seek will be minimal, and thus defendant Metro will not suffer prejudice as a result of any delay by the movant in seeking to intervene.

(5)     Other Factors

The parties have not addressed other factors that would militate in favor of granting or denying intervention.

When coupled with the movant's representations that its intervention in this case will not serve to delay the deadline for completion of discovery or the other deadlines in this case, the Court cannot find that the case has progressed to the point that the movant should not be permitted to intervene. Based on the representations of the movant's counsel, the concerns raised by defendant Metro of revisiting discovery and interfering with the current discovery schedule appear unsubstantiated.

B.  Substantial Interest in the Subject Matter

There is no dispute that the movant has a substantial interest in the subject matter of the case and specifically in enforcement of Title IX, and defendant Metro has not suggested otherwise.

### C. Impairment of Movant's Interest

The burden of showing that the interest of the movant may be impaired in the absence of intervention is minimal. See Miller, 103 F.3d at 1247. See also Purnell, 925 F.2d at 948; Grutter, 188 F.3d at 399. The movant argues that, since the plaintiff is no longer seeking class certification, there is a greater likelihood that this case could be resolved "through a settlement agreement or other monetary disposition that does not compel Metro to implement the institutional changes necessary to ensure that students are protected from [] dangerous and discriminatory conditions in the future." Docket Entry No. 110, at 5. In addition, the movant contends that a ruling in favor of defendant Metro could "complicate the United States' efforts to prosecute future instances of unlawful discrimination" in this district by establishing adverse precedent. Docket Entry No. 110, at 6.

Defendant Metro is correct that the movant has another avenue of seeking relief available since the United States can pursue a Title IX administrative enforcement action against Metro. Thus, defendant Metro argues that the movant does not "need" to intervene in this case. Docket Entry No. 115, at 2. However, whether or not there is any alternative avenue for the movant is not the standard, but rather whether the movant's interest may be impaired absent intervention. Defendant Metro did not respond to the movant's contention that a potential adverse precedent in this case could impair the movant's ability to enforce Title IX violations in this District, and the Court finds that the movant has met its minimal burden of showing that its interest could be impaired without intervention.

### D. Adequacy of Representation

As the movant implicitly suggests, this factor blends into the consideration of impairment of the movant's interest. Again, the movant has only a minimal burden of showing that the existing parties may not adequately represent the movant's interest. Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972); Blackwell, 467 F.3d at 1008; United States v. Michigan, supra; Grutter, 188 F.3d at 400; Litton by Arnold v. Commissioner of

8

Health & Env't, 973 F.2d 1311, 1319 (6th Cir. 1992); Doe v. Briley, 2007 WL 1345386, * 5 (May 7, 2007) (Trauger, J.).

A determination of adequacy of representation can involve consideration of whether there is collusion between the existing parties or whether the parties have adverse interests to the putative intervenor. See Purnell, 925 F.2d at 949-950. The plaintiff and the putative intervenor are not adverse and there is no hint of collusion between the plaintiff and the existing defendants. In addition, if all the movant sought was to intervene to seek damages on behalf of the plaintiff, there would be absolutely no grounds for the United States to intervene. The plaintiff and her counsel are clearly capable of pursuing and motivated to pursue claims for damages. However, the movant argues that, because the plaintiff is no longer seeking class certification, there is a greater likelihood of settlement or other resolution of this case that might not include a requirement that defendant Metro implement institutional changes.

Defendant Metro suggests that the plaintiff jettisoned her class claims because she would not have been successful in pursuing class certification. In so doing, defendant Metro appears to have merged the merits of class certification with the issue of whether either the plaintiff or the movant can pursue a Title IX claim seeking "institutional changes" without the case having been certified as a class action. The movant does not seek to revive a request for class certification; nor would such a request to seek class certification be granted at this stage in the case. In addition, the plaintiff has not withdrawn her Title IX claim.

The defendant has not contended that "institutional changes" cannot be sought by either the plaintiff or the movant in this case without class certification. Neither the movant nor the plaintiff has addressed the scope of the injunctive relief to which either would be entitled or whether injunctive relief in the form of "institutional changes" remains available if Gilberto is no longer transported by Metro special education buses. It is also not clear whether any remedy sought by the movant would be coterminous with the remedy the plaintiff could seek. If the plaintiff is barred from seeking injunctive relief because Gilberto is no longer transported by Metro special education

9

buses and the United States can seek injunctive relief broader than what the plaintiff can assert, the plaintiff's representation is clearly inadequate. Even if the relief that the plaintiff seeks can still properly include injunctive relief, if the plaintiff is no longer transported by Metro special education buses, the plaintiff may understandably concentrate on seeking compensatory damages--either through litigation or settlement--to the potential detriment of claims for injunctive relief. Thus, the movant has met its minimal burden of showing that the plaintiff may not adequately represent the interest of the movant.[4]

In addressing this factor, defendant Metro again echoes its concern that intervention will delay the progression of the case and further complicate the case with additional discovery. Those concerns, while valid, are more appropriately addressed, and were addressed, in the context of consideration of the timeliness of the motion to intervene.

Taking into account that the Sixth Circuit has directed that requests for intervention be treated liberally, along with the minimal standards for determining impairment of interest and inadequate representation, the Court finds that the motion to intervene should be granted.

Despite having granted the motion to intervene, the Court will not extend any scheduling deadlines already established in this case because of such intervention, and, as addressed above, takes the United States at its word that its intervention in this case will not cause any disruption to the schedule already established. See Advisory Committee Notes to the 1996 amendments to Rule 24 (intervention may be subject to "appropriate conditions or restrictions responsive among other things to the requirements of efficient conduct of the proceedings").

Having determined that intervention is appropriate under Rule 24(a)(2), it is not necessary to address whether the movant should be granted permissive intervention under Rule 24(b)(2).

The Clerk is directed to file and docket the complaint in intervention attached to the motion to intervene (Docket Entry No. 109-1).

---

[4] The movant's contentions on the issues of substantial interest, impairment and adequacy of representation are exactly the same arguments made in and accepted by the Southern District of New York in AB v. Rhinebeck Central Sch. Dist., 224 F.R.D. 144, 156-157 (S.D.N.Y. 2004).

Defendant Metro shall have until November 24, 2008, to file a response to the complaint in intervention.

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than ten (10) days from the date of service of this order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 9(a)(1) of the Local Rules for Magistrate Judge Proceedings.

It is so ORDERED.[5]

                                                      _____
                                                    JULIET GRIFFIN
                                                    United States Magistrate Judge

---

[5] The Court has considered the motion to intervene as a nondispositive motion under 28 U.S.C. § 636(b)(1)(A). However, should the motion be considered to be the functional equivalent of the motions specifically enumerated in 28 U.S.C. § 636(b)(1)(A), see Vogel v. U.S. Office Prods. Co., 258 F.3d 509 (6th Cir. 2001); Massey v. City of Ferndale, 7 F.3d 506 (6th Cir. 1993); Bennett v. General Caster Serv. of N. Gordon Co., 976 F.2d 995 (6th Cir. 1992), this order may be deemed to be a report and recommendation for which the standard of review is de novo.