IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| KIMBERLY LOPEZ, as guardian, next friend and parent of Gilberto Lopez, a minor | )<br>)<br>) No. 3-07-0799 |
| v. | ) |
| METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY; and GENESIS LEARNING CENTERS | )<br>)<br>)<br>) |
| UNITED STATES OF AMERICA,<br>    Intervening Plaintiff | )<br>)<br>) |

O R D E R

As provided herein, the motion of defendant Metropolitan Government of Nashville and Davidson County, Tennessee ("Metro") to quash subpoena (Docket Entry No. 145) is DENIED.

Defendant Metro seeks to quash a subpoena served by the intervening plaintiff United States of America ("United States").[1] The United States filed a response (Docket Entry No. 153), to which defendant Metro filed a reply (Docket Entry No. 155), and the United States filed a sur-reply (Docket Entry No. 157).[2]

---

[1] Like defendant Metro, the Court is perplexed about why the United States served a subpoena duces tecum upon Metro rather than serving Metro with a request for production of documents pursuant to Rule 34 of the Federal Rules of Civil Procedure. The United States suggests that it served a subpoena because the United States had previously sought the information but that Metro had recommended that the United States seek a court order. See Docket Entry No. 153, at 2. Of course, the United States could have sought a court order by filing a motion to compel after Metro objected to requests for production of documents. Regardless, however, the Court will consider the document requests inasmuch as nothing in Rule 45 appears to expressly prohibit serving a subpoena duces tecum on a party.

[2] The parties did not file a joint written statement of the matters in dispute, as required by Local Rule 37.01(a). In addition, although it attached prior correspondence between counsel, Metro did not file a certification that counsel for the parties had conferred in good faith in an attempt to resolve the issue, as required by Local Rule 37.01(b)(3). Even though Local Rule 37.01(b)(3) provides that

In the subpoena the United States seeks Metro Police Department documents relating to any complaints and/or investigations of alleged sexual misconduct, harassment or assault occurring on school buses transporting students to public or contract schools in the Metro public school system from January 1, 2005, to present, and all documents in the custody of the Metropolitan Nashville Public School System ("MNPS") received by the MNPS relating to any complaint from January 1, 2003, to present, alleging sexual misconduct, harassment or assault on such school buses. See Docket Entry Nos. 145-1, at 1-3.

Defendant Metro emphasizes that, in its motion to intervene (Docket Entry No. 109), the United States represented that it did not intend to "issue substantial discovery requests in light of the comprehensive factual record already developed," and that any request for additional discovery would be "minimal" in light of the December 5, 2008, deadline for completion of fact discovery.[3] Defendant Metro also points out that the United States had sought to obtain the same documents on three prior occasions and that defendant Metro had consistently advised that the documents could not be released because of the confidentiality provisions of Tennessee law relating to records of child sexual abuse.

---

a motion to quash a subpoena will not be considered unless the moving party has filed such a certification, the Court has considered the motion inasmuch as the parties have engaged in correspondence about at least some of the issues raised. However, such conferring and particularly the Rule 37.01(a) statement might have refined the issues in dispute, particularly the issues first raised by defendant Metro in its reply.

[3] The December 5, 2008, deadline for completion of fact discovery was extended to January 15, 2009, by order entered December 9, 2008 (Docket Entry No. 154), to permit defendant Genesis the opportunity to obtain police and medical records relating to the plaintiff.

Tenn. Code Ann. §§ 37-1-601 et seq. provides a "comprehensive approach for the detection, intervention, prevention and treatment of child sexual abuse," Tenn. Code Ann. 37-1-601(a).[4] Tenn. Code Ann. § 37-1-612, provides, in pertinent part, as follows:

> (a) In order to protect the right of the child and the child's parents or other persons responsible for the child's welfare, all records concerning reports of child sexual abuse, including files, reports, records, communications and working papers related to investigations or providing services . . . shall be confidential and exempt from other provisions of law, and shall not be disclosed, except as specifically authorized [by the statute to child care agencies and for purposes of mandatory child abuse reporting].
>
> (b) Except as otherwise provided . . ., it is unlawful for any person, except for purposes directly connected with administration of this part [of the statute], to disclose, receive, make use of, authorize or knowingly permit, participate in, or acquiesce to the use of any list or name, or any information concerning a report or investigation of a report of harm under this part [of the statute], directly or indirectly derived from the records, papers, files or communications of the department or other entities authorized by law to assist the department when such information was acquired in the course of the performance of official duties. . .
>
> (c) In addition to such other purposes as may be directly connected with the administration of this part [of the statute], access to such records, excluding the name of the reporter, which shall be released only as provided in subsection (g),[5] shall be granted to other following persons, officials, or agencies for the following purposes:
>
> (1) A law enforcement agency investigating a report of a known or suspected child sexual abuse; . . . .

In further response to a previous request from the United States, counsel for defendant Metro wrote that "[b]ecause I am not aware of a statutory exception to T.C.A. § 37-1-612 that would allow the Metropolitan Government to legally release the requested records to you, I would recommend that you seek a court order to obtain the records," since "in the absence of a court order or applicable

---

[4] Tenn Code Ann. § 37-1-601(b) also provides that the purpose of the statute is the same as that provided in Tenn. Code Ann. § 37-1-402, addressing mandatory child abuse reports, specifically to "protect children whose physical or mental health and welfare are adversely affected by brutality, abuse or neglect" so that "the protective services of the state shall be brought to bear on the situation to prevent further abuses, to safeguard and enhance the welfare of children, and to preserve family life."

[5] Section 37-1-612(g) addresses release of the name of any person reporting child sexual abuse to DCS employees, other specific persons, and the abuse registry.

statutory exception to T.C.A. §37-1-612, [Metro is] simply unable to legally release the specific records . . ."  Docket Entry Nos. 145-1, at 5; and 145-7 at 2.

In response to Metro's motion, the United States argues that the exception contained in Tenn. Code Ann. § 37-1-612(c)(1), cited above, applies to the United States Department of Justice in its capacity as a law enforcement agency charged with enforcing Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681 et seq., and that the decision in Farley v. Farley, 952 F.Supp. 1232 (M.D. Tenn. 1997) (Wiseman, J.), compels the production of the requested documents.  The United States explains that it is entitled to the information sought to "determine the extent to which Metro's policies and practices fostered an environment conducive to sexual harassment on special needs school buses in contravention of Title IX," Docket Entry No. 153, at 3, and, relying upon a news report that Metro police said there were "more victims" of sexual assault on schools buses and that school officials could have prevented the assaults, see Docket Entry No. 145-6, at 3, the United States "suspect[s] other episodes of sexual harassment among students with disabilities on special needs buses."  Docket Entry No. 153, at 3.[6]

In reply, defendant Metro argues that the United States is not a "law enforcement agency" under Tenn. Code Ann. § 37-1-612(c)(1), and that Farley v. Farley does not compel disclosure of the requested documents.  Although not raised in the original motion to quash, in its reply, defendant Metro also contends that the scope of the documents requested by the United States is unrelated to the relief of "institutional change" sought by the United States, particularly since defendant Metro has already implemented the institutional change of hiring bus monitors for all of its special education buses and the request by the United States for all Police Department documents could

---

[6] The news report also quoted the Metro police spokesman as reporting that, in addition to the allegations in the instant case and the related case of Staehling v. Metropolitan Government, No. 3-07-0797, the Police Department "has two active investigations involving alleged inappropriate sexual contact of special education students by other students on special education buses," and that those incidents would not have occurred "if there had been adults" on the buses.  Docket Entry Nos. 145-6, at 3-4.

4

include documents generated in the course of ongoing, active criminal prosecutions that would be exempt under the Tennessee Public Records Act, Tenn. Code Ann. § 10-7-503.

In its sur-reply, the United States reiterates its position that the law enforcement agency exception applies, and further argues that the Tennessee Public Records Act is inapplicable.

Analysis of the question of whether the United States is entitled to the documents it seeks must be made, to a significant extent, in a vacuum since the parties have not cited any cases, nor has the Court found any cases, that are directly on point. It appears that there simply are no cases--or none that the Court could find--that address the issue of whether and/or the extent to which the United States is entitled to documents related to sexual assaults of school children in a Title IX action when a state statute would otherwise protect the disclosure of such information.[7]

### 1. Law Enforcement Exception to State Confidentiality Statute

Defendant Metro contends that, although the Department of Justice may be a law enforcement agency in other contexts, the Educational Opportunities Section of the Civil Rights Division of the Department of Justice is not a law enforcement agency under Tenn. Code Ann. § 37-1-612(c)(1), which "contemplates an agency actively investigating allegations of violations of criminal law," specifically child sexual abuse. Docket Entry No. 155, at 1. To bolster its position, defendant Metro also cites to Tenn. Code Ann. § 37-1-605(a)(7), which requires that "[l]aw enforcement officer[s]" report knowledge or suspicion of sexual abuse, arguing that the reference to a "law enforcement officer" means "an officer charged with the enforcement of criminal laws . . . ." Id. at 1-2. The Court notes, however, that the listing of exemptions from non-disclosure in section 37-1-612(c) includes persons "engaged in bona fide research or audit purposes," Tenn. Code Ann. § 37-1-612(c)(4), so it is not possible to argue that the exceptions from disclosure are

---

[7] Defendant Metro does cite Hart v. Paint Valley Local Sch. Dist., 2001 WL 1681140 (S.D. Ohio Oct. 17, 2001), a Title IX case filed by an individual plaintiff, in which the United States was not involved. See discussion infra at 10-11.

limited only to those involved in the reporting, investigation, and administration of specific instances of child sexual abuse or those with authority to enforce criminal laws.

Other than citing in a footnote a reference to Farley, id. at 2 n.1, defendant Metro has provided no cases to support its position. The citation to Judge Wiseman's observation that legislative authorization to release records relating to child abuse is limited to "judicial and law enforcement communities" was in the context of consideration of whether the State of Tennessee waived its right to assert confidentiality of the plaintiff's file, see Farley, 952 F. Supp. at 1241, and thus is not relevant to the issue at hand.

The United States relies on the case of United States v. The Bertie County Bd. of Educ., 319 F. Supp.2d 669 (E.D.N.C. 2004), which interpreted the "law enforcement" exception to non-disclosure under the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, to apply to the United States in a desegregation action to enforce section 407 of the Civil Rights Act of 1964, 42 U.S.C. § 2000c-6(a)-(b). The Eastern District of North Carolina relied on Black's Law Dictionary[8] and Court of Appeals decisions holding that the "law enforcement" exemption of the Freedom of Information Act ("FOIA") applies to civil and criminal enforcement proceedings. See Pope v. United States, 599 F.2d 1383, 1386 (5th Cir. 1979); Moore-McCormack Lines, Inc. v. I.T.O. Corp. of Baltimore, 508 F.2d 945, 949 (4th Cir. 1974); Soucie v. David, 448 F.2d 1067, 1079 n.45 (D.C. Cir. 1971).

In its motion to intervene, the United States described its legal interest in the subject of this case in "ensuring that recipients of federal funds, such as Metro, do not discriminate on the basis of the [sic] sex in violation of Title IX. . . . [and] in ensuring that federal funds are not disbursed to entities that fail to comply with federal anti-discrimination laws." Docket Entry No. 110, at 4. In

---

[8] "Law Enforcement" is defined in Black's Law Dictionary as "[t]he detection and punishment of violations of the law. . . . [and] is not limited to enforcement of criminal laws," and refers to the exemption in the Freedom of Information Act for law enforcement purposes that includes enforcement of non-criminal laws. Black's Law Dictionary 901 (8th ed. 2004). A "law-enforcement officer" is defined as "[a] person whose duty is to enforce the laws and preserve the peace." Id.

6

its response in opposition to the motion of the United States to intervene, defendant Metro acknowledged that the "United States possesses independent investigatory power to examine and protect its interests in <u>the enforcement of</u> Title IX." Docket Entry No. 115, at 2 (emphasis added).

It would be anomalous to charge the United States with enforcement of Title IX but, at the same time, preclude it from obtaining information relevant to its enforcement responsibilities. In fact, federal regulations contemplate that the United States may access compliance information and that "[a]sserted considerations of privacy or confidentiality may not operate to bar the Department [of Education] from evaluating or seeking to enforce compliance . . ." 34 C.F.R. § 100.6 (made applicable to Title IX by 34 C.F.R. § 106.71).

Based on the case law interpreting "law enforcement" in the context of Freedom of Information Act cases, along with the absence of an explicit limitation in Tenn. Code Ann. § 37-1-612(c)(7) to law enforcement officers involved solely with criminal proceedings, and the acknowledged role of the United States in the enforcement of Title IX, the Court finds that the United States qualifies for the law enforcement exception of section 37-1-612(c)(7).

2. <u>Applicability of Farley v. Farley</u>

In <u>Farley,</u> the plaintiff asserted conspiracy claims under 42 U.S.C. § 1983, against the state, state officials, and her ex-husband arising from the removal of her children from her custody by what is now the Tennessee Department of Children's Services ("DCS").[9] The issue in <u>Farley</u> was whether the plaintiff or her counsel should be permitted to disclose to fact witnesses the contents of her DCS record that had been produced to the plaintiff pursuant to a protective order precluding such disclosure. Without discussion, the Court upheld the portion of the Magistrate Judge's order that precluded disclosure of other DCS investigative files. On the other hand, after comprehensive

---

[9] The United States refers to Metro as a party and that the plaintiff sought records from Metro in <u>Farley.</u> However, Metro was not a party nor did the plaintiff request any documents from Metro. Metro simply was not involved in <u>Farley.</u>

7

Case 3:07-cv-00799 Document 161 Filed 01/15/09 Page 7 of 12 PageID #: 1569

analysis, the Court modified the protective order to allow the plaintiff to reveal the contents of her own DCS file when engaging in fact witness interviews, with limitations on further disclosure and use of such information.

While recognizing that, in federal civil rights actions it would be anomalous to allow state law privileges, such as those contained in Tenn. Code Ann. §§ 37-1-409 and 37-1-612, to hamper enforcement of those claims, the Court adopted a deferential standard in analyzing and balancing the competing state and federal objectives "to ensure vindication of the paramount federal interest with as minimal an intrusion on the state interests as is consistent with [a] federal claim." 952 F. Supp. at 1237 (citing Van Emrik v. Chemung County Dept. of Social Servs., 121 F.R.D. 22, 25 (W.D.N.Y. 1988)). In conclusion, the Court commented that disputes "pitting the invocation of T.C.A. §§ 37-1-409 and 37-1-612 against a civil rights plaintiff's need for disclosure" is likely to recur in the Tennessee federal district courts and explained that its comprehensive analysis was "intended to forestall at least some degree of duplication of effort and exhaustion of judicial resources" in addressing such further disputes. 952 F. Supp. at 1243.

The instant dispute is indeed the "pitting" of the same Tennessee statutes against a civil rights plaintiff's need for disclosure. However, this case may present an even stronger case for disclosure of information otherwise protected because the requesting party is not an individual plaintiff, seeking to vindicate her rights under 42 U.S.C. § 1983, as was the plaintiff in Farley, but rather the United States Department of Justice, seeking to enforce Title IX.

Defendant Metro cites a recent decision from the Southern District of New York, in which the Court also balanced the competing interests between the state's confidentiality statute and the federal civil rights plaintiff. Deleon v. Putnam Valley Bd. of Educ., 228 F.R.D. 213 (S.D.N.Y. 2005). In that case, however, the issue was whether the name of the reporter of child abuse was subject to discovery. As provided infra, the defendant may redact the name of any reporter, along with other personal, identifying information relating to other persons.

Defendant Metro also cites an unpublished Title IX case from the Southern District of Ohio, in which the Court granted the motion of the County Children Services to quash a subpoena seeking documents relating to two other children who were allegedly sexually abused by the same child who allegedly sexually abused the plaintiff and other case files involving allegations of abuse or misconduct of the alleged perpetrator. Hart v. Paint Valley Local Sch. Dist., 2001 WL 1681140 (S.D. Ohio Oct. 17, 2001). The Southern District of Ohio did recognize that the Ohio confidentiality statutes (whose wording is not identical to the Tennessee statutes at issue) was not absolute, citing, inter alia, Farley, but granted the motion to quash, reasoning that, although the information is "arguably relevant to the claims," the information may not be admissible, that it was not clear why the records would "shed light" on what the defendant school district knew since there was "no reason to believe that the information . . . was ever disclosed to the defendant school district," and the plaintiffs had not shown why they could not obtain the substantial equivalent of the records by other means. In this case, defendant Metro has not suggested that the United States could obtain the requested documents by other means and it appears that defendant Metro was indeed aware of other allegations of sexual abuse. Similarly, defendant Metro has not suggested that the information at issue would not be admissible at trial.

The Court finds that the reasoning in Farley should apply in this case. However, just as in Farley, it is appropriate to consider minimalizing the intrusion on the state interests provided in Tenn. Code Ann. § 37-1-602.

### 3. Ongoing Criminal Investigations

Defendant Metro also argues that the scope of the request by the United States for all documents relating to complaints or investigations of allegations of sexual misconduct is so broad that it could include documents created by the Police Department in the course of ongoing, active criminal prosecutions, which would be exempt from disclosure under the Tennessee Public Records

9

Act, Tenn. Code Ann. § 10-7-503, pursuant to Rule 16(a)(2) of the Tennessee Rules of Criminal Procedure, based on the authority of Scheider v. City of Jackson, 226 S.W.3d 332, 345 (Tenn. 2007). As the United States argues, even if the Public Records Act were applicable, the same Farley analysis would apply.

Significantly, defendant Metro does not affirmatively represent that there is any ongoing, active criminal prosecution. The Court is aware of the pendency of criminal proceedings against Kolby Harris, the alleged perpetrator of the sexual abuse suffered by the plaintiff in this case. It does not appear to the Court, however, that it is documents related to the Kolby Harris prosecution that the United States seeks. On March 4, 2008, counsel for the United States wrote to Metro that the news media had reported that the Metro Police Department was investigating "similar claims by other disabled students[10] who allege inappropriate sexual conduct on special education school buses." Docket Entry No. 145-4. In counsel's letter of September 17, 2008, the United States again referred to a similar quote from the media, attributed to the Metro police spokesperson. Docket Entry No. 145-6.

### 4. Other Objections

Defendant Metro suggests that the documents requested by the United States are something more than the "minimal" discovery the United States assured the Court it would seek. The United States did not address this argument, and defendant Metro did not elaborate on any burden of production or on whether the document production would be extensive. The Court finds that the discovery sought by the United States is not substantial and, without more information from defendant Metro, can be produced with minimal effort.

---

[10] The Court assumes that the allusions to "similar claims" and "other disabled students" referred to claims by special education students other than the plaintiff in this case and in the Staehling case.

10

In its reply, defendant Metro also maintained that the scope of the document request was unrelated to the relief sought by the United States since the "institutional change" of hiring bus monitors has already occurred. Although the United States did not address this argument in its sur-reply, the Court finds that the voluntary act by defendant Metro might not preclude the United States from seeking injunctive relief and that using bus monitors may not comprise the entirety of the injunctive relief sought by the United States.

5.   Conclusion

Defendant Metro shall respond to the subpoena served by the United States and shall produce responsive documents, subject to the following conditions:

(a)   Defendant Metro shall not be required to produce documents related to the plaintiff in this case or to the plaintiff in Staehling v. Metro.

(b)   Defendant Metro may redact the names of any reporter of sexual abuse, the victim of alleged sexual abuse and any other personal, identifying information of the reporters, victims and other persons from any documents produced to the United States.

(c)   Such documents shall be subject to the protective order entered March 7, 2008 (Docket Entry No. 69), except that paragraph (4) of that order shall not apply since the documents will already contain redactions.

The Court will consider any further protective order relating to the documents at issue and any further appropriate restrictions related to non-dissemination or disclosure, upon motion by defendant Metro.

If the Court has erroneously assumed that the United States seeks information about complaints of sexual abuse on special education buses other than the complaints made by the plaintiff in this case and in the Staehling case, the Court will consider expanding the disclosure by defendant Metro upon motion by the United States if the United States is able to show why that

11

information is necessary and that it cannot be obtained from other sources (or has not already been obtained).

Any party desiring to appeal this order of the Magistrate Judge may do so by filing a motion for review no later than ten (10) days from the date of service of this order. The motion for review must be accompanied by a brief or other pertinent documents to apprise the District Judge of the basis for the appeal. See Rule 9(a)(1) of the Local Rules for Magistrate Judge Proceedings.

It is so ORDERED.

JULIET GRIFFIN
United States Magistrate Judge

12