UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CUMBERLAND TRUST AND INVESTMENT COMPANY, as next friend and trustee of THE GILBERTO KELLY LOPEZ IRREVOCABLE TRUST, <br><br> Plaintiff, <br><br> v. <br><br> GENESIS LEARNING CENTERS, <br><br> Defendant. | Case No. 3:07-0799 <br> Judge Echols |

## MEMORANDUM

On March 12, 2010, after a two week trial, a jury returned a verdict in favor of Defendant Genesis Learning Centers ("Genesis") on Plaintiff Gilberto Lopez'[1] claims for violation of Title IX, 20 U.S.C. § 1681(a), and negligence. Pending before the Court are post-trial motions, including, in order of filing, Genesis' Motion for Costs (Docket Entry No. 556) and Motion for Attorneys' Fees (Docket Entry No. 559), and Plaintiff's Motion for New Trial (Docket Entry No. 573).[2] Those Motions have been fully briefed by the parties and are ripe for consideration.

---

[1]The actual Plaintiff is the Cumberland Trust and Investment Company as next friend and trustee of the Gilberto Kelly Lopez Irrevocable Trust. For simplicity, the Court refers to Plaintiff as "Gilberto" or Plaintiff.

[2]With the Motion for New Trial, Plaintiff filed a Motion for Hearing (Docket Entry No. 574), to which Genesis objects (Docket Entry No. 584). That Motion will be denied because the parties explain their respective positions in the written filings, the Court is fully aware of the facts underlying this litigation, and the Court finds that oral arguments would not be of benefit in resolving the Motion for New Trial.

1

### A. Genesis' Motion for Costs

Pursuant to Rule 54(d) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1920, Genesis moves the Court for an award of costs in the amount of $30,144.35. Defendants' Motion does not comply with Local Rule 54.01.

Rule 54.01(a) requires counsel to file a cost bill with the Clerk for the assessment of taxable costs pursuant to 28 U.S.C. § 1920. The rule also contains specific procedures to be utilized in seeking costs, and leaves the assessment of costs in the first instance to the Clerk. Once the Clerk makes an initial assessment, the parties can take exception to the Clerk's action. Only after the Clerk makes a final decision as to costs may the request for costs be presented to the Court.

Because of Genesis' failure to comply with the Local Rule, its request for costs will be denied. However, the initial filing was made within thirty (30) days of the Court's entry of Judgment as required by Local Rule 54.01(a), and Genesis will be afforded additional time to make a revised cost filing which complies with the Local Rules.

### B. Genesis' Motion for Attorneys' Fees

Genesis seeks attorneys' fees in the amount of $358,997.00 because it was the prevailing party on Plaintiff's Title IX claim. This figure is based upon 846.80 hours in attorney and paralegal time which Genesis claims was necessary to defend this action.

Genesis argues that Plaintiff's pursuit of a Title IX claim against it was unreasonable and groundless. Genesis notes that the Title IX claim was the only federal claim asserted against it and posits that the motivating factor for Plaintiff's continued pursuit of the Title IX claim was the potential for an award of attorneys' fees if Plaintiff prevailed on that claim. Genesis also observes

that without the Title IX claim, this would have been merely a negligence case over which the Court would have lacked jurisdiction.

Section 1988 of Title 42 provides that "[i]n any action or proceeding to enforce . . . title IX of Public Law 92-318 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as a part of the costs." 42 U.S.C. § 1988(b). With regard to the award of attorneys' fees under Section 1988, the Sixth Circuit has stated:

> Although § 1988 ordinarily entitles a prevailing . . . plaintiff to recover reasonable attorney fees, the Supreme Court has held that a prevailing defendant should recover only upon a finding by the district court that "'the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Hughes v. Rowe, 449 U.S. 5, 14 (1980)(quoting Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978)); Wayne v. Village of Sebring, 36 F.3d 517, 530 (6th Cir.1994), cert. denied, 514 U.S. 1127 (1995); Tarter v. Raybuck, 742 F.2d 977, 985 (6th Cir.1984). In other language the Court has stated, "a plaintiff should not be assessed his opponent's attorney's fees unless a court finds that his claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." Christiansburg, 434 U.S. at 422. In applying this standard, courts must balance the policy of encouraging the pursuit of valid civil rights claims against the public interest in discouraging baseless or vindictive lawsuits. Accordingly, the Supreme Court has cautioned district courts considering prevailing defendants' applications for attorney fees to " 'resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" Christiansburg, 434 U.S. at 421-22, quoted in Wayne, 36 F.3d at 530.

White v. City of Ypsilanti, 1997 WL 70523 at *2 (6th Cir. 1997). In light of this, "[a]n award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct." Jones v. Continental Corp., 789 F.2d 1225, 1232 (6th Cir.1986).

Genesis claims it is entitled to an award of attorneys' fees because Plaintiff failed to prove that Gilberto was subjected to sexual harassment which was so severe, pervasive, and objectively

3

offensive that it deprived him of access to educational opportunities, or that Genesis had actual knowledge of the sexual harassment but was deliberately indifferent to the same. Genesis notes that these are required elements to prove a Title IX claim in accordance with the Supreme Court's decision in Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999).

Genesis' arguments are essentially the arguments presented to the Court in the context of the parties' cross-motions for summary judgment and, in fact, Genesis generally relies upon the same cases to support its position. The Court denied Genesis' Motion for Summary Judgment on Plaintiff's Title IX claim.

With respect to the severe, pervasive and objectively offensive nature of the harassment, the Court pointed out in its summary judgment ruling that "[m]ost courts which have addressed the issue have concluded that even a single incident of rape is sufficient." Lopez v. Metro. Govt. of Nashville, 646 F.Supp.2d 891, 913 (M.D. Tenn. 2009)(collecting cases). The Court also observed that the Sixth Circuit in Soper v. Hoben, 195 F.2d 845 (6th Cir. 1999) held that "'[w]ith respect to the first prong of the Davis test' evidence that plaintiff was raped 'obviously qualifies as being severe, pervasive and objectively offensive sexual harassment that could deprive [plaintiff] of access to the educational opportunities provided by her school.'" Id. at 913-14. At trial, the jury was presented with a videotape of the incident and from that tape the jury could easily have concluded that Kolby forced Gilberto to perform fellatio on him. Therefore, there was evidence which supported Plaintiff's contention that the sexual harassment was severe, pervasive and offensive.

As for the deprivation of educational opportunities element, that, too, was addressed in the summary judgment rulings. The Court observed, "withdrawal from school is a concrete and negative effect on the victim's education." Id. at 914. At trial, the evidence indicated that, after the

4

incident, Gilberto transferred to a residential treatment facility. While Genesis sought to show that the transfer was a result of Gilberto's myriad of problems and not related to the bus incident, the jury could have concluded otherwise.

Finally, Genesis asserts that Plaintiff's Title IX claim was frivolous, unreasonable, or groundless because Plaintiff failed to show that Genesis had actual knowledge of sexual harassment and was deliberately indifferent despite that knowledge. In doing so, Genesis focuses exclusively upon what it did or did not know about Kolby harassing Gilberto. However, this Court rejected the very same myopic view of knowledge in the summary judgment ruling. In doing so, the Court observed that while some courts after Davis had indicated that "'a school must be aware that a particular individual was subjected to a sexually hostile environment or that a particular individual was the perpetrator of sexual harassment . . . [t]he more accepted view, and the one this Court adopts is that, to be liable, 'the institution must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based.'" Id. at 915 quoting, Staehling v. Metro. Govt. of Nashville, 2008 WL 4297939 at *10 (M.D. Tenn. 2008). The Court went on to hold that Title IX liability "'could be based on the recipient's knowledge of, and deliberate indifference to, a *particular harasser's* conduct." Id. (italics in original). At trial, Plaintiff presented numerous instances (by his count nine) wherein Genesis' administrators and/or teachers knew about sexual misconduct by Kolby and from that evidence a jury could conclude that Kolby was a known harasser who should have been subjected to more restraints by Genesis.

5

Plaintiff cannot be faulted for pursuing a Title IX claim against Genesis. Plaintiff was given the green light to do so by the Court and pursuit of that claim was not egregious. Accordingly, the Court will exercise its discretion and deny Genesis' request for an award of attorneys' fees.

## C. Gilberto's Motion for a New Trial

Plaintiff seeks a new trial for three basic reasons. First, Plaintiff argues that Genesis' reliance on Kolby's intentional act as a bar to Plaintiff's negligence claim was improper since the same was an affirmative defense which was not pled. Second, Plaintiff argues that the Court erred in instructing the jury with regard to Kolby's intentional act. Finally, Plaintiff argues that the jury verdict in favor of Genesis is against the weight of the evidence.

### 1. *Intentional Act As Affirmative Defense, Waiver*

Rule 8 of the Federal Rules of Civil Procedure lists nineteen affirmative defenses which must be pled, Fed. R. Civ. P. 8(c), and "intentional act" is not one of them. The list, however, is not all encompassing for the rule requires a defendant to plead "any other matter constituting an avoidance or affirmative defense." Id. Generally, affirmative defenses are distinguished from general denials because they require the pleading of facts which are extrinsic to plaintiff's cause of action. See, In re Sterten, 546 F.3d 278, 284 (3d Cir. 2008). Requiring that affirmative defenses be pled "gives the opposing party notice and an opportunity to respond." Smith v. Sushka, 117 F.3d 965, 969 (6th Cir. 1997).

Since the "intentional act" defense was interposed in an effort to defeat Plaintiff's negligence claim, the Court is to look to Tennessee law to determine whether an intentional act is an affirmative defense to such a claim. See, Roskam Baking Co. v. Lanham Mach. Co, 288 F.3d 895, 901 (6th Cir. 2002)(in determining whether a defense to a state claim is an affirmative defense, state law defines

6

the nature of the defense while Rule 8(c) provides the manner and time in which the defense must be raised). The Tennessee Supreme Court has specifically stated that "a negligent defendant may, of course, **raise a third party's intentional act to refute elements of the plaintiffs' negligence claim** such as duty and causation[.]" Turner v. Jordan, 957 S.W.2d 815, 823 (Tenn. 1997)(emphasis added). Because the question of intentional acts goes to the issue of whether Plaintiff can prove the elements of a negligence claim, it is not an affirmative defense which must be specifically pled. Were it otherwise, a defendant in a negligence action would be required to plead, as affirmative defenses, that (1) it owed no duty (or breached no duty) of care to the plaintiff; (2) that its conduct did not fall below the applicable standard of care; (3) that plaintiff suffered no harm; (4) that defendant's actions were not the causation of any harm; and/or (5) that defendant's actions were not the legal or proximate cause of any harm, whenever the defendant believes plaintiff cannot establish any one or more of these elements of a negligence case. That is clearly not the law as a defendant in its answer may merely deny that it was negligent.

Yet even if the intentional act of Kolby constituted an affirmative defense which Genesis should have pled in its answer, the "failure to raise an affirmative defense by a responsive pleading does not always result in waiver." Moore, Owen, Thomas & Co. v. Coffey, 922 F.2d 1439, 1445 (6th Cir. 1993). Because the purpose of Rule 8(c) is to give notice, "[a] defendant does not waive an affirmative defense if the defense is raised at a time when plaintiff's ability to respond is not prejudiced." R.H. Cochran & Assoc., Inc. v. Sheet Metal Workers Int'l Assoc., 335 Fed. Appx. 516, 519 (6th Cir. 2009). In other words, there is no waiver "when the plaintiff receives notice of the affirmative defense." Seals v. General Motors Corp., 546 F.3d 766, 770 (6th Cir. 2008).

7

In its Motion for Summary Judgment filed well over a year before trial, Genesis argued that the harm to Gilberto was not foreseeable specifically because Kolby engaged in an intentional act. (Docket Entry No. 170 at 17-18). Plaintiff understood this to be an issue as evidenced by the fact that in his own motion for summary judgment (also filed more than a year before trial), Plaintiff argued that under <u>Turner</u>, Genesis had a duty to exercise reasonable care to protect Gilberto and that "this duty included Defendants' obligation to protect Gilberto from the foreseeable intentional acts of a third party adult student with a recorded and known history of attempted sexual attacks on young boys on school buses[.]" (Docket Entry No. 184 at 29-30).

If this does not demonstrate that Plaintiff had notice the intentional acts of Kolby was an issue in regard to foreseeability, Genesis' proposed jury instructions and proposed verdict form,[3] which were filed almost a year before the initial trial date, certainly placed Plaintiff on notice. Genesis tendered an instruction which read:

> In this case, the defendants claim that Kolby Harris's intentional act was the sole cause in fact and/or the proximate cause of the May 7, 2007 incident. Even though he has not offered evidence, it is necessary that you determine whether Kolby Harris's intentional act was the sole cause in fact and/or the sole proximate cause of the May 7, 2007 incident.

(Docket Entry No. 383). Further, the first question on Genesis' Proposed Verdict Form asked the jury whether "the actions of Kolby Harris were the sole cause in fact, and/or the sole proximate cause of any damages sustained" by Gilberto. (Docket Entry No. 386). On January 27, 2010, in anticipation of the rescheduled trial set to commence in March 2010, Genesis again filed proposed

---

[3]At the time of these filings, the Metropolitan Government of Nashville and Davidson County ("Metro") was still a Defendant in this action and the Defendants filed joint requests for jury instructions.

instructions and a proposed jury verdict form which used identical language specifically addressing Kolby's intentional act. (Docket Entry Nos. 495 & 496).

Given this record, Plaintiff was clearly placed on notice that Genesis intended to rely on Kolby's intentional act in an effort to show that it was not liable for any harm or injury to Gilberto. Plaintiff's present assertions (1) that Genesis somehow injected the intentional act issue as "an untimely, backdoor maneuver to reintroduce the comparative fault of Harris"; (2) that such actions somehow precluded Plaintiff's counsel from presenting appropriate jury instructions on that issue and its relationship to comparative fault; and/or (3) that Genesis' actions prevented Plaintiff's counsel from developing argument or proof that Kolby's alleged incompetence made him unable to act intentionally are rejected as without merit.

### 2. *Instructions Regarding Intentional Act*

With regard to the intentional act of Kolby, Plaintiff argues in his Motion for New Trial that the issue should have been presented "in the negligence charge as intervening or superseding cause, as Plaintiff argued at trial[.]" (Docket Entry No. 572 at 1). In his accompanying brief, Plaintiff writes:

> A complete and accurate charge would have employed language of White v. Lawrence, a medical malpractice claim concerning a physician's responsibility for the suicide of the plaintiff's decedent:
>> . . . an independent intervening cause breaks the chain of proximate causation and thereby precludes recovery. The law is equally clear, however, that an intervening act, which is a normal response created by negligence, is not a superseding, intervening cause so as to relieve the original wrong doer of liability, provided the intervening act could have reasonably been foreseen and the conduct of [of the original wrongdoer] was a substantial factor in bringing about the harm. Accordingly, "an intervening act will not exculpate the original wrongdoer <u>unless it is shown that the intervening act could not have been reasonably *anticipated*</u>. Whether such an event or act constitutes an intervening cause is for the jury to determine unless the

9

> uncontroverted facts and inferences to be drawn from the facts make it so clear that all reasonable persons must agree on the proper outcome."

975 S.W.2d 525, 529-530 (Tenn. 1998)(internal citations omitted)(emphasis added).

(Docket Entry No. 573 at 14). Apart from the foregoing excerpt, Plaintiff presents no authority which suggests that this Court's instructions were wrong and no cogent arguments which would indicate that this Court erred in the jury charge which addressed the intentional act of Kolby.

With regard to White, Plaintiff highlights its language to the effect that a wrongdoer is not relieved from liability unless it is shown that the intentional act could not have been "anticipated." However, whether an act is "anticipated" suggests that the act must be "foreseeable," and vice versa, and Tennessee cases frequently interchange "foreseeable" or "anticipated" (or variations of those words) in discussing negligence. See, McClenahan v. Cooley, 806 S.W.2d 767, 775 (Tenn. 1991)("harm giving rise to the action could have reasonably been foreseen or anticipated"); Rathnow v. Knox County, 209 S.W.2d 629, 633 (Tenn. Ct. App. 2006)("If an injury giving rise to a cause of action for negligence could not have reasonably been foreseen or anticipated, then there is no proximate cause").

In this case, the jury was specifically instructed that one of the issues it was to determine was whether Genesis proved "by a preponderance of the evidence that Kolby Harris's intentional act was the sole and proximate cause of the May 7, 2007 incident on the bus and was not foreseeable by Genesis Learning Centers." (Jury Charge at 12). Further, the jury was given a specific instruction relating to the intentional act of Kolby which read:

**INTENTIONAL ACT BY THIRD PARTY**
> In this case, Genesis Learning Centers claims that Kolby Harris's intentional act was the sole and proximate cause of the May 7, 2007 incident on the bus and was not foreseeable by Genesis Learning Centers.

> Even though he has not offered evidence, it is necessary that you determine (1) whether Kolby Harris's intentional act was the sole and proximate cause of the May 7, 2007 incident and (2) whether or not it was foreseeable.
> The Defendant, Genesis Learning Centers, asserts and relies upon the intentional act by a third party, Kolby Harris, and it has the burden to prove by a preponderance of the evidence that the third party's act or acts was the sole and proximate cause of the May 7, 2007 incident on the bus and that said act or acts were not foreseeable. If Genesis Learning Centers fails to meet this burden of proof, it cannot be exonerated by the intentional act of Kolby Harris.

(Id. at 23). The jury was also given an instruction on foreseeability which, among other things, informed them that "[a] risk is foreseeable if a reasonable person could foresee the probability of its occurrence or if the person was on notice that the likelihood of danger to the party to whom it owed a duty is probable." (Id. at 20). In the Verdict Form, the jury was instructed that if it found Genesis proved by a preponderance of the evidence that Harris' intentional act was the sole and proximate cause of the May 7, 2007 incident and it further found that Genesis proved the same to be unforeseeable, the jury was to return a verdict in favor of Genesis on the negligence claim, without apportioning any fault.

Juries are presumed to understand and follow a court's directions and instructions. United States v. Carter, 236 F.3d 777, 787 (6th Cir. 2001). In this case, the jury was clearly instructed that to absolve Genesis of liability due to Kolby's intentional act, the jury would have to find that Kolby's act was the sole and proximate cause of the May 7, 2007 incident and that Genesis could not foresee (or anticipate) Kolby's act. The Court does not read White as requiring anything more. Moreover, both White and Turner indicate that the conduct of a negligent defendant should not be compared with the intentional conduct of a third party, White, 975 S.W.2d at 531; Turner, 957 S.W.2d at 823, and thus it was proper for the Court not to have the jury compare fault if it determined the proximate cause of Plaintiff's injury was the unforeseeable intentional act of Harris.

11

### 3. *Weight of the Evidence*

Finally, Plaintiff seeks a new trial on the grounds that the jury's failure to find liability on Title IX and its determination that the intentional act of Kolby barred Plaintiff's negligence claim was against the weight of the evidence.

The request for a new trial under Fed. R. Civ. P. 59 is governed by federal law, In re Brown, 342 F.3d 620, 626 (6th Cir. 2003), and is almost entirely within the discretion of the trial court, Allied Chemical Corp. v. Daiflon, 449 U.S. 33, 36 (1980). A new trial may be granted to rectify a "'seriously erroneous result.'" Holmes v. City of Massillon, 78 F.3d 1041, 1046 (6th Cir. 1996). "A 'seriously erroneous result' [is] evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e. the proceedings being influenced by prejudice or bias." Kusens v. Pascal Co., Inc., 448 F.3d 349, 367 n. 13 (6th Cir. 2006). In ruling on a motion for new trial, the Court "must compare the opposing proofs, weigh the evidence, and set aside the verdict only if it determines that the verdict is against the clear weight of the evidence." United States v. L.E. Cooke Co., 991 F.2d 336, 343 (6th Cir. 1993). The motion should be denied if the jury reasonably could have reached its verdict. Id. The verdict is not unreasonable simply because different inferences and conclusions could have been drawn from the evidence or because a different result might have been more reasonable. Id.

In this case, the Court cannot say that the verdict is against the weight of the evidence or that the jury's verdict in favor of Genesis was a "seriously erroneous result." Twenty-three witnesses testified and numerous documents were introduced over the course of the nine-day trial and from

such evidence the jury could readily determine, as it did, that Genesis was not liable under Title IX or for negligence.

Plaintiff begins by arguing that Gilberto was subjected to a rape and suggests that the jury could not have reached any other conclusion based upon the weight of the testimony presented. While the Court believes from the weight of the evidence that Kolby did in fact force Gilberto to perform fellatio, a jury could have determined otherwise since it viewed the tape (several times) and, as the Court pointed out in the summary judgment ruling, "the videotape is not conclusive." Lopez, 646 F. Supp.2d at 914.

Even accepting that Gilberto was raped, the jury could have returned a verdict in favor of Genesis because there was ample evidence that it was not deliberately indifferent, or, for purposes of the negligence claim, that Kolby's actions were not reasonably foreseeable to Genesis. In this regard, there was abundant evidence from which the jury could conclude that real responsibility for the safety of Gilberto when he left Genesis rested with Metro, and not Genesis.

The relationship between Genesis and Metro was governed by a contract and that contract specifically excluded transportation. The bus on which the incident occurred was a Metro school bus, driven by a Metro school bus driver. Metro decided the route the buses were to take and decided which students were to be assigned to a bus. Further, Metro had a manual which the drivers were supposed to follow and that manual indicated that there was only to be one child per seat on special needs buses. From such evidence, the jury could have easily placed responsibility for the entire incident on Metro instead of on Genesis.

Given the fact that transportation was Metro's responsibility, the jury could also conclude that Genesis did all that it could in relation to school bus safety since the evidence showed that, for

13

years, Genesis requested that monitors be placed on Metro buses. Genesis did so because the students were in a highly structured environment while at Genesis, but rode on buses which Genesis viewed to have less than adequate supervision. Despite those requests, Metro chose not to place monitors on school buses until after this incident occurred.

The jury could also have easily determined that the incident was the result of a flukish series of events for which Genesis was not responsible. On May 7, 2007, the regular bus driver, Chris Gaines ("Gaines"), was absent and he was replaced by Gloria Smith ("Smith"). Gaines testified that he enforced the one child per seat rule and would not have allowed Gilberto to wander back to Kolby's seat. Smith, the substitute bus driver, agreed that the policy called for only one student per seat and that Gilberto should not have been allowed to move seats and sit next to Kolby. At the time the school bus left Genesis, Gilberto was sitting alone in his designated seat at the front of the bus three rows ahead and on the opposite side of the bus from Kolby. It was Metro bus driver Smith who allowed Gilberto to move, and Smith who did not intervene once she saw Gilberto sitting next to Kolby.

The jury could also determine that Kolby forcing Gilberto to perform fellatio was not reasonably foreseeable given Genesis' knowledge of Kolby's past. Kolby had been at Genesis for nearly a year, without being involved in a similar incident. What information Genesis did have about Kolby was that, while he had been involved in prior instances of sexual activity, that sexual activity involved consensual sexual activity with age-appropriate females, and did not involve forcing himself on younger, male students, or at least a jury could have so found.

The foregoing are but some of the reasons why the jury may have found in favor of Genesis and any one of those reasons would have been sufficient. Having presided at the trial, the Court

14

cannot say that the jury reached a verdict which was contrary to the evidence and certainly cannot conclude that the jury's decision was against the "clear weight of the evidence," or that it reached a "seriously erroneous result" so as to warrant a new trial.

**D. Conclusion**

On the basis of the foregoing, Genesis' Motion for Costs (Docket Entry No. 556) will be denied without prejudice. Genesis' Motion for Attorneys' Fees (Docket Entry No. 559) will be denied. Plaintiff's Motion for New Trial (Docket Entry No. 573) and the accompanying Motion for Hearing (Docket Entry No. 574) will also be denied.

An appropriate Order will be entered.

_____
ROBERT L. ECHOLS
UNITED STATES DISTRICT JUDGE